UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DAVID BROWN (#293387)                                    CIVIL ACTION

VERSUS

CASSANDRA TEMPLE, ET AL.                                 NO. 11-0797-JJB-RLB


RULING

This matter comes before the Court on the Motion to Dismiss of defendants Cassandra Temple, Burl Cain, James M. LeBlanc and Trish Foster, rec.doc.no. 8.  This motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Lt.Col. Cassandra Temple, Warden Burl Cain, Secretary James M. LeBlanc and Legal Programs Director Trish Foster, complaining that the defendants violated his constitutional rights by recording confidential telephone conversations between himself and his criminal attorneys and by passing along information obtained from those conversations to the prosecution in the plaintiff's criminal proceedings.  Pursuant to Amended Complaint, the plaintiff has added as defendants Col. Bobby Achord and Louisiana assistant district attorneys Tommy Block, Hugo A. Holland, Jr., Mike Futrell, and Lea Hall.[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule

---

[1]      Assistant District Attorneys Tommy Block, Hugo A. Holland, Jr., Mike Futrell, and Lea Hall have not been served and have not appeared in this proceeding.

12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Bell Atl. Corp. v. Twombly, supra. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, supra. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" Id. Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (citations omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful conduct] devoid of further factual enhancement." Id. (internal quotation marks omitted).

From a review of the plaintiff's Complaint, as amended, it appears that, while incarcerated at LSP in connection with a prior conviction, he and four (4) alleged co-conspirators were indicted for first degree murder in connection with the killing of a prison security officer during a prison uprising at LSP in December, 1999. The plaintiff alleges that, subsequently, in April, 2011,[2] he was

_____

[2]    Although the plaintiff's Amended Complaint asserts that he received the referenced information from his attorneys in April, 2012, his original Complaint referred to the pertinent date as being in April, 2011, and this earlier date is consistent with the plaintiff's attached exhibits, leading the Court to conclude that the earlier date is correct and is what was intended by the plaintiff.

informed by one of his criminal defense attorneys (by mail) that officials at LSP were recording the plaintiff's telephone conversations with defense attorneys and were forwarding copies of the recordings to the district attorney(s) assigned to prosecute the plaintiff in connection with the first degree murder charge. The plaintiff contends that the defendants' action violated his constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and he prays for monetary damages as a result of the defendants' alleged wrongful conduct, as well as declaratory and injunctive relief. It further appears from the record that in October, 2011, the plaintiff was convicted in connection with the referenced murder charge and has been sentenced to death in connection therewith.[3]

From a review of the record, it appears that prior to March, 2011,[4] the policies applicable to inmate telephone conversations at LSP provided that such conversations could be monitored and/or recorded by prison officials, but that "a properly placed telephone call to an attorney will not be monitored or recorded" (absent reasonable suspicion of illicit activity, a formal investigation, and authorization by the Secretary of the Louisiana Department of Public Safety and Corrections ("DOC")). These policies further provided for the placement of written notices adjacent to each telephone, advising inmates that "this telephone has been electronically programmed to monitor and/or record telephone calls" and that, "[b]y using this telephone, you consent to the monitoring and/or recording of your conversation, except for properly placed legal calls." (Emphasis added).

---

[3]     The Court notes that a lawsuit making similar claims, filed in this District by one of the plaintiff's co-conspirators, has been dismissed for failure to state a claim upon which relief may be granted. See Robert Carley v. Cassandra Temple, et al., Civil Action No. 11-0682-JJB-SCR.

[4]     In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." Scanlan v. Tex. A & M Univ., 343 F.3d 533 (5th Cir. 2003). When ruling on a motion to dismiss in a case filed by a pro se plaintiff, however, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed. Howard v. King, 707 F.2d 215 (5th Cir. 1983); Clark v. Huntleigh Corp., 119 Fed.Appx 666 (5th Cir. 2005) (finding that because of the plaintiff's pro se status, "precedent compels us to examine all of his complaint, including the attachments"). Furthermore, a district court may consider documents attached to a defendant's motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Scanlan, supra.

In addition, the plaintiff signed a form upon arrival at LSP in 1994 which explicitly stated that "the Department of Public Safety and Corrections (Louisiana State Penitentiary) reserves the authority to monitor and/or record conversations on this telephone system", that "[t]he use of the institutional telephone system constitutes consent to this monitoring," but that "[a] properly placed telephone call to an attorney will not be monitored and/or recorded." (Emphasis added).

Notwithstanding the foregoing, it appears that in February or March, 2011, the DOC implemented a new written policy, promulgated in the Louisiana Administrative Code, which policy now provides that telephone calls between inmates and attorneys "shall be recorded and are subject to monitoring, [including] calls made to attorneys," and that "use of the offender telephone system shall constitute consent by all parties to the recording and/or monitoring of the call." LAC 22:I.315(D)(1)(d) and (g). In addition, the policy sets forth that it is both "the offender's responsibility to advise all other parties that conversations are subject to being monitored and/or recorded," LAC 22:I.315(D)(6)(a)(ii), and that "a recorded message shall notify all parties that all calls shall be recorded and are subject to monitoring," LAC 22:I.315(D)(1)(f).[5] With regard to calls made to attorneys, the policy provides that such calls "will not be routinely monitored" but that such calls "shall be recorded" and may be monitored by prison officials if the warden of an institution determines that a particularized security need exists. LAC 22:I.315(D)(6)(a)(iii). In addition, the policy provides that the written notification placed adjacent to each telephone shall reflect that, while all calls are subject to being monitored and/or recorded, and while use of the telephone will constitute consent to the monitoring and/or recording, "[t]elephone calls to your designated attorney(s) will not be routinely monitored." LAC 22:I.315(D)(6)(f).

The plaintiff complains that he was never provided with notification regarding the referenced changes in policy and that, as a result, he continued to believe that his telephone conversations

---

[5]       Prior to the 2011 amendment, the policy provided only for a recorded announcement that the call originated from a prison.

with attorneys were neither monitored nor recorded.[6]  The plaintiff further asserts that, in

contravention of the written policies predating February or March, 2011, prison personnel were in

fact recording his legal telephone conversations.  In addition, the plaintiff asserts that the written

notices posted adjacent to LSP telephones have not been changed since March, 2011, and

continue to state that, "by using this telephone, you consent to the monitoring and/or recording of

your conversation, except for properly placed legal calls."  (Emphasis added).

Apparently in April, 2011, the plaintiff received correspondence from one of his criminal

defense attorneys which made reference to the possibility that the plaintiff's telephone

conversations with his attorneys were being monitored and/or recorded.  Accordingly, the plaintiff

filed a formal grievance with prison officials in June, 2011, complaining that his legal telephone

conversations were being recorded and also that copies of same had been provided to the

prosecuting attorneys in his criminal case.  Prison officials responded to the plaintiff's grievance,

advising the plaintiff that the substance of only three (3) conversations had been recorded, copied

and provided to prosecuting attorneys and that these conversations had not involved persons

identified as attorneys on the plaintiff's calling list.  The prison's response did not address the

---

[6]       To the extent that the plaintiff's allegations may be interpreted as complaining
regarding the alleged failure to promulgate the 2011 amendments to the telephone policy at LSP,
this claim is without merit.  In order to state a claim under 42 U.S.C. § 1983, the plaintiff must
allege a violation of rights, privileges, or immunities secured by the Constitution or laws of the
United States.  Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).  Any
alleged failure by prison officials to promulgate a prison rule or regulation does not amount to a
federal due process violation.  The obligation of state officials to promulgate rules and regulations
in accordance with the Louisiana Administrative Procedure Act is a procedural requirement solely
of state law.  See Marshall v. Lynn, 3 F.3d 440 (5th Cir. 1993), cert. denied, 511 U.S. 1020, 114
S.Ct. 1402, 128 L.Ed.2d 75 (1994); Martin v. Blackburn, 581 F.2d 94 (5th Cir. 1978) (holding that
a "claim that state officials have failed to follow the procedural provisions of state law, without more,
does not aver a cause of action under § 1983").  Specifically, there is no federal authority holding
that such promulgation is a requirement of federal due process, and even the Act itself does not
purport to limit the substantive content of any state regulation or rule.  It merely prescribes the
manner by which agencies with rule-making authority are directed to go about the rule-making
process under state law.  Without a state-created substantive limitation on the rule-making
authority, therefore, the Act cannot be seen to create a protected liberty interest.  Marshall v. Lynn,
supra (noting that "[t]he Louisiana Administrative Procedures Act does not create a liberty interest
in the promulgation of prison rules in accordance with state law").

plaintiff's contention that conversations between the plaintiff and his attorneys had been recorded and/or monitored by prison officials.

Turning to a substantive review of the plaintiff's claims, the Court first finds that the plaintiff's claim for compensatory damages fails as a matter of law.  Pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from the receipt of compensatory damages for mental or emotional injury in the absence of some showing of physical injury.  In the instant case, the plaintiff has not alleged that he sustained any physical injury as a result of the defendants' alleged wrongdoing. Accordingly, this aspect of the plaintiff's claim must be rejected.  Although the plaintiff might still theoretically be entitled to recover nominal or punitive damages, Hutchins v. McDaniels, 512 F.3d 193 (5th Cir. 2007), the plaintiff would still need to establish some constitutional violation by the defendants in order to merit such recovery.

The Court next rejects the plaintiff's contention that his First Amendment rights, made applicable to the states through the Fourteenth Amendment, have been violated by the defendants' alleged conduct.  The law is clear that prisoners have no right to unlimited use of the telephones, even to contact their attorneys.  See Lopez v. Reyes, 692 F.2d 15 (5th Cir. 1982).  See also Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994), citing Benzel v. Grammar, 869 F.2d 1105 (8th Cir.), cert. denied, 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989).  Further, an action by prison officials which restricts or limits an inmate's access to the telephones does not violate the inmate's constitutional rights so long as the inmate does not suffer from an inability to communicate with the courts, counsel, family or friends. Hill v. Estelle, 537 F.2d 214 (5th Cir. 1976).  In the instant case, the plaintiff has not alleged and it does not appear that anything prevented him from communicating with his attorneys through the mails or in person, or even by telephone, during the relevant period.  See Castillo v. Blanco, 2007 WL 2264285 (E.D. La., Aug. 1 2007) (finding no violation resulting from restrictions upon use of the telephones, "especially where adequate alternative means of communication, such [as] access to the mail, [was] available"); Decraene v.

United States, 1999 WL 246708 (E.D. La., April 26, 1999) (same, where inmate was able to communicate with his attorney "both by personal visit and mail"); Brown v. Day, 1999 WL 816378 (E.D. La., Oct. 7, 1999) (dismissing claim as frivolous that inmate was not allowed to utilize the telephone for a period of 84 days because "nothing prevented him from using the mails to communicate during that period"). Cf., Mays v. Reese, 2006 WL 3877391 (S.D. Miss., July 18, 2006) (finding that 6-month deprivation of telephone privileges did not implicate a protected liberty interest). Accordingly, to the extent that the plaintiff was aware that his legal telephone conversations were allegedly being monitored and/or recorded, either through notification from his attorney in April, 2011, or through implementation of the 2011 policy amendments, he had other means available to him to exercise his First Amendment rights and to confer with his attorneys. And to the extent that the plaintiff was truly unaware that his legal telephone calls were subject to being recorded and potentially monitored, then the alleged wrongful conduct of prison officials can have had no chilling effect upon his exercise of First Amendment rights. See Busby v. Dretke, 359 F.3d 708, 721 at n. 13 (5th Cir.), cert. denied, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.ed.2d 249 (2004) (recognizing that an inmate's claim that his exercise of First Amendment rights has been chilled by the monitoring of his mail is weakened by his contention that he was not aware of such monitoring). Thus, the Court concludes that the plaintiff has failed to show that any unreasonable limitations were placed upon his ability to exercise his First Amendment rights. For this reason, therefore, the plaintiff's claim in this regard is subject to dismissal as being without cognizable legal merit.

The plaintiff also asserts that his Fourth Amendment right to be free from unreasonable searches and seizures, also made applicable to the states through the Fourteenth Amendment, has been violated by the recording and/or monitoring of his attorney telephone calls. However, where an inmate is aware that his calls with another party are being recorded, those calls are not protected by any privilege. See, e.g., United States v. Hatcher, 323 F.3d 666 (8th Cir. 2003); United

States v. Madoch, 149 F.3d 596 (7th Cir. 1998); United States v. Harrelson, 754 F.2d 1153 (5th Cir.),

cert. denied, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985).  As the Eight Circuit reasoned

in Hatcher, "[t]he presence of the prison recording device destroy[s] the attorney-client privilege"

because "the inmates and their lawyers ... [can]not reasonably expect that their conversations [will]

remain private."  Id.  Under such circumstances, "[t]he presence of the recording device [is] the

functional equivalent of the presence of a third party."  Id.  Cf., United States v. Friedman, 300 F.3d

111 (2nd Cir. 2002), cert. denied, 538 U.S. 981, 123 S.Ct. 1785, 155 L.Ed.2d 672 (2003) (holding

that an inmate who is on notice that his calls are being recorded has no reasonable expectation

of privacy for Fourth Amendment purposes); United States v. Workman, 80 F.3d 688 (2nd Cir.), cert.

denied, 519 U.S. 938, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996) (same); United States v. Willoughby,

860 F.2d 15 (2nd Cir. 1988), cert. denied, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989)

(same).  See also United States v. Lentz, 419 F.Supp.2d 820 (E.D. Va. 2005) (holding that inmates

waive any privilege for telephone conversations when they proceed with conversations in the face

of notice that the calls are being recorded and are subject to monitoring); United States v. Eye,

2008 WL 1701089 (W.D. Mo. 2008) (defendant waived attorney-client privilege by communicating

with his attorney on the prison telephone because the facility provided notice by informing the

defendant upon his arrival, through signs on the telephone, and via a recorded message prior to

all calls that the calls were subject to monitoring and recording).  Accordingly, the plaintiff's

assertion that prison officials monitored and recorded his legal telephone conversations and sent

the recordings thereof to prosecuting attorneys in violation of the Fourth Amendment does not

present an arguable factual or legal basis for relief under the facts presented in this case.[7]

---

[7]        Similarly, the plaintiff's claim involving the alleged violation of his Fifth Amendment
right against self-incrimination is without merit.  A constitutional violation under the Fifth
Amendment occurs when an individual is compelled to be a "witness against himself" in a criminal
matter.  Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).  See also
Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (recognizing that a Fifth
Amendment violation involves some form of coercive conduct and that there is no liability under §
1983 if incriminating statements are not then introduced against the plaintiff in a criminal
proceedings).  In the instant case, there is no indication that any coercive tactics were utilized by

Turning to the plaintiff's assertion that his Sixth Amendment right to the effective assistance of counsel, also made applicable to the states through the Fourteenth Amendment, has been violated by the defendants' conduct, the mere fact that the defendants recorded and may have monitored the plaintiff's conversations with his attorneys does not, in itself, establish a Sixth Amendment violation. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." Clutchette v. Rushen, 770 F.2d 1469 (9th Cir. 1985), cert. denied, 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986). See also Dye v. Hofbauer, 197 Fed.Appx. 378 (6th Cir. 2006), cert. denied, 552 U.S. 942, 128 S.Ct. 45, 169 L.Ed.2d 245 (2007) (noting that "[t]he attorney-client privilege is a creation of the common law, and a violation of this privilege generally does not constitute" a constitutional violation). A Sixth Amendment violation occurs only if the invasion of the attorney-client relationship causes a criminal defendant to be deprived of either his right to counsel or his right to the effective assistance of counsel. To make this showing, the criminal defendant must establish that he was prejudiced in his criminal case by the governmental intrusion into the attorney-client relationship. Dye v. Hofbauer, supra; United States v. Castor, 937 F.2d 293 (7th Cir. 1991); United States v. Hernandez, 937 F.2d 1490 (9th Cir. 1991). Thus, to establish a Sixth Amendment violation, the plaintiff must be able to show that the alleged monitoring of his telephone calls to his attorneys prejudiced his defense in his criminal case.

The plaintiff has failed to allege facts suggesting that he suffered any prejudice in fact as a result of the defendants' actions. The documentation attached to his pleadings suggests that while all of his telephone conversations, including those to attorneys, were recorded by the telephone system in place at LSP, only three of these conversations were "copied" and provided to the prosecution, and these three conversations did not involve attorneys and so did not invade

_____

any defendant or that any incriminating statements obtained from the plaintiff's telephone conversations were utilized during his criminal trial.

the attorney-client privilege.[8]   The plaintiff's assertion that the recordings, while perhaps not "copied", were provided to the prosecution in "original" form is conclusory and is not entitled to serious consideration inasmuch as such electronic recordings were certainly not in a form conducive to providing as "originals".  Similarly, the plaintiff's assertion that his conversations with attorneys, in addition to being recorded, were also "monitored" by prison officials is also conclusory, would have been in violation of prison rules and, even if true, are not alleged to have resulted in information which was shared with prosecuting attorneys so as to have impacted upon the plaintiff's criminal proceedings.[9]   Finally, the plaintiff has pointed to no information whatever which was obtained from the recorded telephone conversations which was utilized by prosecutors so as to prejudice his defense.   In fact, he concedes, by reference to statements made by prosecuting attorneys in a March, 2011, hearing in a related criminal case (involving one of the plaintiff's criminal co-conspirators), that these attorneys admitted to having inadvertently received copies of recorded legal conversations but further attested that no information from such conversations would be used in the criminal trial and that a "clean team" had been created in the prosecutor's office to thereafter insulate the prosecution from such information and avoid any future potential violations of the attorney-client privilege.  This concession by the plaintiff strongly suggests that the prosecution was aware of its obligations vis-a-vis attorney-client communications at LSP and did not seek to take unfair advantage of the potential availability of recorded conversations.  For these

---

[8]      The routine recording of the plaintiff's telephone conversations with attorneys, prior to the amendment of LSP policy in 2011, appears to have been in violation of prison rules inasmuch as, prior to such amendment, the written policy stated that "a properly placed telephone call to an attorney will not be monitored or recorded."  Notwithstanding, the mere violation of state regulations or statutes is not actionable under § 1983.  Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989).  See also Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").

[9]      The plaintiff makes a conclusory statement that strategy determinations were disseminated to prosecutors and that witnesses who he wished to call at trial were intimidated by prison officials and induced not to testify.  He has not identified any such witnesses, however, nor the substance of any testimony which they might have provided.

reasons, the Court finds that the plaintiff has failed to state a viable claim of the violation of his Sixth Amendment rights.

In addition to the foregoing, were the plaintiff to prove successful in establishing a violation of his Sixth Amendment rights which resulted in actual prejudice to his defense, the plaintiff would face another hurdle in this case. Specifically, a showing of such actual prejudice would effectively establish that the plaintiff's criminal trial and conviction were tainted by the defendants' conduct. The problem with this is that an inmate plaintiff is not allowed to pursue relief in a § 1983 proceeding if success in such proceeding would necessarily result in the implication that the underlying conviction is invalid. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 283 (1994). In such event, the plaintiff is required to first pursue his claim on direct appeal of the criminal conviction or in a habeas corpus proceeding under 28 U.S.C. § 2254. Id. Accordingly, the Court concludes that a successful showing by the plaintiff that he was prejudiced by the defendants' actions in his criminal trial would effectively call into question the validity of the resulting conviction and, as such, his § 1983 claim relative to the defendants' conduct would not be cognizable until the conviction was overturned on appeal or through a habeas corpus challenge. For this reason as well, the plaintiff's Sixth Amendment claim must be dismissed.

Finally, the Court will address the plaintiff's claims asserted against Col. Bobby Achord and the named Assistant District Attorney defendants. Although defendant Achord has not filed or joined in the instant Motion to Dismiss, and although the defendant district attorneys have not been served in this proceeding, the Court is authorized, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, to dismiss an action or claim brought by a prisoner against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if it lacks an arguable basis either in fact or in law. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), citing Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827,

104 L.Ed.2d 338 (1989); Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995). A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless, a category encompassing allegations that are fanciful, fantastic and delusional. Neiztke v. Williams, supra, Denton v. Hernandez, supra. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. Id.; Ancar v. SARA Plasma, Inc., 964 F.2d 465 (5th Cir. 1992). A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed. See Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986).

In the first place, the plaintiff's claims asserted against Col. Bobby Achord are essentially identical to those asserted against the other LSP defendants whose instant Motion to Dismiss the Court will grant pursuant to the reasoning and authority provided above. For similar reasons, the Court finds it appropriate to dismiss the plaintiff's claims against defendant Achord.

Turning to the plaintiff's claims asserted against the named assistant district attorneys, the plaintiff's claims arise from the actions of these defendants in prosecuting the plaintiff for the conviction which underlies the claims addressed herein. Pursuant to clearly established law, these claims are barred by the doctrine of absolute prosecutorial immunity. A district attorney is absolutely immune in a civil rights lawsuit for any action taken pursuant to his role as a prosecutor in preparing for the initiation of judicial proceedings or in presenting the State's case before the court. See Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Esteves v. Brock, 106 F.3d 674 (5th Cir.), cert. denied, 522 U.S. 828, 118 S.Ct. 91, 139 L.Ed2d 47 (1997). The courts employ a "functional" test in determining whether a prosecutor is entitled to absolute immunity, pursuant to

which the courts look to the "nature of the function performed" by the prosecutor. <u>Buckley v.</u> <u>Fitzsimmons</u>, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). A prosecutor's immunity applies to actions taken in initiating prosecution, in carrying the case through the judicial process, and to those actions which are "intimately associated with the judicial phase of the criminal process." <u>Esteves v. Brock</u>, <u>supra</u>, <u>quoting</u> <u>Imbler v. Pachtman</u>, <u>supra</u>. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" <u>Labry v. Mamoulides</u>, 248 F.3d 1142 (5th Cir. 2001), <u>quoting</u> <u>Kerr v.</u> <u>Lyford</u>, 171 F.3d 330 (5th Cir. 1999), <u>abrogated on other grounds</u>, <u>Castellano v. Frazogo</u>, 352 F.3d 330 (5th Cir. 2003), <u>cert. denied</u>, 543 U.S. 808, 125 S.Ct. 31, 160 L.Ed.2d 10 (2004). In the instant case, the plaintiff's claims against the named assistant district attorneys are based upon the defendants' conduct as advocates for the State of Louisiana, and the defendants are therefore entitled to absolute prosecutorial immunity. <u>See</u> <u>Imbler</u>, <u>supra</u>; <u>Cousin v. Small</u>, 325 F.3d 627 (5th Cir. 2003), <u>cert. denied</u>, 540 U.S. 826, 124 S.Ct. 181, 157 L.Ed.2d 48 (2003). Accordingly, the plaintiff's claims asserted against these defendants must be dismissed because the plaintiff seeks recovery from defendants who are immune from such relief. <u>See</u> <u>Delaney v. Ackal</u>, 2009 WL 5195935 (W.D. La., Oct. 10, 2009).

Finally, the plaintiff also seeks to invoke the supplemental jurisdiction of this court with regard to his claims arising under state law. District courts, however, may decline to exercise supplemental jurisdiction over a plaintiff's claims if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367. In the instant case, inasmuch as the Court recommends dismissal of the plaintiff's federal claims, it is appropriate that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

**IT IS ORDERED** that the Court declines to exercise supplemental jurisdiction over any state law claims which the plaintiff may have.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of defendants Cassandra Temple, Burl Cain, James M. LeBlanc and Trish Foster, rec.doc.no. 8, be and it is hereby **GRANTED**, dismissing the plaintiff's federal claims asserted against these individuals, with prejudice.

**IT IS FURTHER ORDERED** that the plaintiff's federal claims asserted against defendants Bobby Achord, Tommy Block, Hugo A. Holland, Jr., Mike Futrell, and Lea Hall be and they are hereby **DISMISSED**, with prejudice, for failure to state a claim pursuant to 28 U.S.C. §§ 1915 and 1915A.

Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on this 29th day of MARCH 2013.

JAMES J. BRADY
UNITED STATES DISTRICT JUDGE